UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

MICHAEL ROSS, *individually and on*       )
*behalf of all others similarly situated*,  )
                                            )
          Plaintiff,                      )
                                            )
      v.                                   )         No. 2:23-cv-00255-LEW
                                            )
NEW RESIDENTIAL MORTGAGE,                    )
LLC, NEWREZ, LLC, and PHH                    )
MORTGAGE CORPORATION,                        )
                                            )
          Defendants.                      )

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

Plaintiff Michael Ross filed this lawsuit against Defendants New Residential Mortgage, LLC ("NRM"), NewRez, LLC ("NewRez"), and PHH Mortgage Corporation ("PHH") and asserts claims related to his unsuccessful attempts to modify the terms of his residential mortgage. Before the Court are Defendants' Motions to Dismiss. NRM & NewRez's Mot. to Dismiss (ECF No. 17); PHH's Mot. to Dismiss (ECF No. 22).

For the reasons below, the Motions are GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The following facts are drawn from Ross's Complaint (ECF No. 1) and are assumed to be true when ruling on Defendants' Motions to Dismiss.

On October 19, 2004, Ross obtained an 80/20 mortgage loan from IndyMac Bank to purchase a house in Maine. The first mortgage, the 80%, was for $616,000. The second

mortgage, the 20%, was for $115,000.  The first mortgage was immediately sold to the Home Equity Asset Trust 2005-3 with U.S. Bank, N.A. as trustee and was serviced by Ocwen Loan Servicing, LLC.  Ocwen merged with PHH in 2018.  The first mortgage was an adjustable-rate loan with fixed interest for three years; thereafter, the interest would be adjusted every six months.  Thus, in 2007, the interest rate increased from 6.625% to 9.625%.  This increased Ross's mortgage payments, and he began struggling to make his payments.

Ross contacted Ocwen, and Ocwen told him that he could be eligible for a loan modification if he stopped making mortgage payments.  Therefore, Ross stopped making his mortgage payments, but instead of offering him a loan modification, Ocwen initiated a foreclosure action.  While Ross was in default, he was not able to refinance his mortgage with another lender.[1]

Over the years, Ocwen has filed four foreclosure actions against Ross.  The fourth foreclosure proceeding was commenced in 2018 in York County, Maine, and it went through mediation with the State of Maine Foreclosure Diversion program.  In December 2019, Ross received a letter with a Mortgage Assistance Offer ("MAO") from NewRez.  The offer explained that if Ross entered into a trial payment plan and made three payments of $4,723.80, he would be considered for a permanent loan modification.  The letter required that Ross's "property be free of liens, judgments, and other encumbrances."  Compl. ¶ 27.

---

[1] Ross's Complaint does not allege when these events with Ocwen transpired, but they appear to have been before Ocwen merged with PHH in 2018.  *See* Compl. ¶¶ 16–19.

Ross was then confused as to whether PHH, NewRez, or NRM was servicing his mortgage. The MAO "was described in a letter which appeared to be from" NewRez, but the first paragraph explained that Ross was offered the trial payment plan "under a PHH Mortgage Services Modification Plan." *Id.* ¶¶ 27, 29. The letter stated that "the account is approved for a PHH Mortgage Services Streamlined Modification." *Id.* ¶ 29. Thus, Ross alleges that he did not know who was servicing his mortgage.

Ross still had the second mortgage on the property, which was serviced by PHH. Because Ross did not have enough money to pay the second mortgage's balance, it was impossible for him to comply with the MOA's condition that the property be free of other liens or encumbrances. Ross made the first trial plan payment, and he was optimistic that he could negotiate with the Defendants since PHH allegedly controlled both mortgages.

In March 2020, NewRez notified Ross that it became the second mortgage's servicer. Ross's lawyer tried to discharge the second mortgage, but his lawyer's efforts were unsuccessful. Ross ultimately decided not to make further trial plan payments, and in April 2020, NewRez told Ross that he was ineligible for a permanent modification because he did not make the three required payments.

In July 2021, Ross's second mortgage was discharged, and his lawyer tried to pursue a similar loan modification as the 2019 offer within the MAO. Ross submitted a new loss mitigation application demonstrating that he was in the same financial position as 2019, and he was optimistic that he would receive a loan modification because his second mortgage was discharged, so he would have been eligible for the 2019 offer.

In June 2022, NewRez rejected Ross's request for a loan modification in a letter that Ross alleges contained numerous false statements. Compl. Ex. 3 (the NewRez letter). On July 5, 2022, Ross's lawyer sent a letter with many questions to NewRez that was a combined request for information ("RFI") and an appeal of the loan modification denial. Compl. Ex. 4. On July 13, NewRez sent a letter acknowledging receipt of the combined RFI letter and appeal of the modification denial. The receipt letter explained:

> Please note that Newrez, LLC is not the servicer of your current loan account. Newrez, LLC is the lending affiliate of New Residential Mortgage, LLC, the company that owns the right to service your loan. PHH Mortgage Services performs all servicing activities on your loan. If you have questions about your mortgage loan, please contact PHH Mortgage Services.

Compl. Ex. 5 at 1. In another letter dated July 15, 2022, from NewRez (c/o PHH Mortgage Services), NewRez wrote that it "determined that no error occurred," and it did not otherwise respond to Ross's questions. Compl. Ex. 6 at 1. Ross's appeal was ultimately denied.

In June 2023, Ross filed this lawsuit asserting four Counts against Defendants. In Count I, Ross argues that Defendants violated Maine's mortgage servicer duty of good faith, codified in 14 M.R.S. § 6113. Ross argues that Defendants did not act in good faith in offering a modification because the initial offer required him to discharge the second mortgage, which he could not do, and after Ross discharged the second mortgage, Defendants acted in bad faith by not extending a similar offer. Ross further alleges that Defendants' proffered reasons for denying his loan modification were false and contrary to federal law and regulations.

In Count II, Ross alleges that PHH violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 and accompanying regulations by not properly responding to his July 2022 letter.

In Counts III and IV, Ross asserts claims on behalf of a putative class.  In Count III, Ross maintains that NRM violated the Maine Fair Debt Collection Practices Act by conducting business as a debt collector through servicing Ross's and the putative class's mortgages without a license in violation of 32 M.R.S. § 11031(1).  In Count IV, asserted against each Defendant, Ross alleges that the Defendants have violated the Maine mortgage servicer duty of good faith by conspiring to conceal the identity of which company services the putative class's mortgages and enabling NRM to operate as a mortgage servicer and debt collector.

The Defendants have filed Motions to Dismiss.

## DISCUSSION

To avoid dismissal, Ross must plead in his Complaint "a short and plain statement [for each] claim showing that [he] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In applying this standard, the Court will accept all factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim.  *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010).  The Court will not accept as true, however, statements that are merely conclusory recitations of legal

standards. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014). Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Thus, "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

## A.    Count I

In Count I, Ross alleges that the Defendants violated Maine's mortgage servicer duty of good faith. *See* 14 M.R.S. § 6113. Ross claims that the Defendants did not act in good faith because the initial loan modification offer, contained in a letter from NewRez, required Ross to free his property of the second mortgage (serviced by PHH), which Ross could not do. Compl. ¶ 62. Furthermore, Ross contends that after he discharged his second mortgage, Defendants acted in bad faith by refusing to extend the previous loan modification offer. *Id.* ¶ 63. Ross claims that the proffered reasons for not extending the prior offer were false and violated federal law and regulations concerning the handling of loss mitigation applications. *Id.* ¶¶ 66–71.

Defendants assert numerous arguments for the dismissal of Count I. NRM argues that Ross lacks Article III standing, that Ross has not adequately pleaded that NRM is a mortgage servicer, and that Ross has not alleged actual damages. PHH and NewRez join NRM in arguing that Ross has not alleged actual damages. PHH asserts that dismissal is appropriate because Ross is precluded from challenging the mediator's finding that PHH

acted in good faith during the mediation and that Ross's reliance on conduct before § 6113's enactment in September 2019 cannot support his claim.

### 1. Standing

I begin with NRM's argument that Ross lacks Article III standing.

Article III of the Constitution "limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). As part of this case-or-controversy requirement, plaintiffs "bear the burden of demonstrating that they have standing," and "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).

To have standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Katz v. Pershing*, *LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (stating that "[t]he standing inquiry is claim-specific"). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 442 U.S. 490, 518 (1975)).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). To be

concrete, an injury "must actually exist." *Id.* at 340.  An allegation of "a bare procedural violation" of the law is insufficient.  *Id.* at 342.

Thus, Plaintiffs cannot "automatically satisf[y] the injury-in-fact requirement" by suing under "a statute grant[ing] a person a statutory right and purport[ing] to authorize that person to sue to vindicate that right."  *Id.* at 341.  Even "in the context of a statutory violation," "Article III standing requires a concrete injury."  *Id.*  Therefore, only plaintiffs "who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *TransUnion*, 594 U.S. at 427; *see also id.* at 427–28 (explaining that an "uninjured plaintiff who sues" "is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)" and holding that those "are not grounds for Article III standing" (quoting *Spokeo*, 578 U.S. at 345 (Thomas, J., concurring))).

NRM moves for dismissal of Count I and argues that Ross has failed to allege an injury in fact that is fairly traceable to NRM.  NRM characterizes Ross's Complaint as involving a "non-actionable 'informational injury'" that "'cannot satisfy Article III' where, as here, it 'causes no adverse effects.'"  NRM & NewRez's Mot. to Dismiss at 13 (quoting *TransUnion*, 594 U.S. at 442).

Ross alleges more than just an informational injury.  Regarding NewRez and PHH, Ross alleges that their proposed loan modification was made in bad faith because it was contingent on Ross removing the second mortgage (serviced by PHH), which Ross could not do.  Compl. ¶¶ 25–31.  After Ross successfully discharged his second mortgage and

therefore would have been eligible for the initial loan modification, the companies were unwilling to extend the previous offer and NewRez's rejection letter allegedly contained numerous false statements. *Id.* ¶¶ 51–58. Under Ross's theory of the case, if NewRez and PHH acted in good faith, he would have been able to receive a lower interest rate. *See id.* ¶ 41. This "monetary har[m]" readily qualifies as a concrete injury in fact. *See TransUnion*, 594 U.S. at 425 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

Though Ross has alleged an injury in fact in Count I, I agree with NRM that Ross has not plausibly alleged that his injuries are fairly traceable to NRM, rather than NewRez or PHH. *See Dantzler*, *Inc. v. Empresas Berríos Inventory & Operations*, *Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) (describing traceability as requiring "the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm" that "cannot be overly attenuated" (quoting *Katz*, 672 F.3d at 71)). In paragraphs 62 and 63 of his Complaint, Ross references all the Defendants, lumping in NRM with NewRez and PHH, to claim that NRM violated the mortgage servicer duty of good faith. These two paragraphs, however, are conclusory and conflict with Ross's specific allegations and the Complaint's exhibits concerning which companies allegedly caused his harm.

In paragraph 62, Ross claims that the Defendants acted in bad faith by requiring that Ross free his property of the second mortgage to be eligible for a loan modification. Compl. ¶ 62. This requirement was allegedly within a December 2019 letter that "appeared to be from Newrez, LLC," but the letter said that Ross was offered the "PHH Mortgage

Services Modification Plan," which, Ross alleges, made it "unclear if Newrez or PHH" was the servicer. *Id.* ¶¶ 27, 29. Ross has not offered any allegations to suggest that NRM was somehow involved in the initial loan modification offer.

In paragraph 63, Ross alleges that after he discharged the second mortgage, Defendants acted in bad faith by refusing to extend him the previous offer and that their new reasons violated federal law and regulations. *Id.* ¶¶ 62–63. But NewRez—not NRM—was the company that denied Ross's requested modification and allegedly made false statements. *Id.* ¶ 53 ("NewRez, however, rejected Mr. Ross for modification . . . .:); Compl. Ex. 3 (the letter from NewRez). Ross's sole non-conclusory allegation about NRM is that NewRez sent Ross a letter in July 2022 acknowledging receipt of his letter and stating that "Newrez, LLC is the lending affiliate of New Residential Mortgage, LLC, the company that owns the right to service your loan." Compl. ¶ 56 (quoting Compl. Ex. 5). Thus, Ross has not plausibly alleged that NRM had anything to do with NewRez or PHH's conduct that gave rise to Count I.

Because Ross has not alleged any facts suggesting that NRM violated the mortgage servicer duty of good faith and his allegations pertain to the other defendants, "causation is absent" since "the injury stems from the independent action[s]" of "third part[ies]." *Katz*, 672 F.3d at 71–72.

Count I will be dismissed as to NRM.[2]  I now consider PHH's and NewRez's remaining challenges to Count I.

---

[2] Alternatively, I would conclude that Count I (and Count IV) must be dismissed against NRM because Ross has not adequately pleaded that NRM is a mortgage servicer within the meaning of 14 M.R.S. § 6113.

### 2. *Actual Damages*

PHH and NewRez seek dismissal because Ross, they claim, has not alleged (or requested) actual damages as required by 14 M.R.S. § 6113(4).

Maine law permits a "homeowner or obligor injured by a violation of the duty of good faith" to "bring an action against the mortgage servicer for all actual damages sustained."  14 M.R.S. § 6113(4)(A).  "In addition to the damages recoverable under this subsection, the court may award a homeowner or obligor statutory damages not exceeding $15,000 for a pattern or practice of the mortgage service[r] violating the duty of good faith."  *Id.* § 6113(4)(B).

PHH and NewRez argue that Count I must be dismissed because Ross has not alleged (or requested) actual damages as required by § 6113(4).  PHH's Mot. to Dismiss at 7–9; NRM & NewRez's Mot. to Dismiss at 14–18.

I find that Ross has plausibly alleged actual damages resulting from NewRez's and PHH's alleged bad faith in connection with how they handled Ross's requested loan modification.  As explained above, Ross has alleged that NewRez's and PHH's bad faith

---

In his Complaint, Ross alleges that NRM is a "'servicer' with regard to Mr. Ross's Loan as defined by 14 M.R.S. § 6113(1)(B-1)."  Compl. ¶ 3.  Ross "states a bare legal conclusion, [which] need not be credited by the Court."  *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, No. 1:16-CV-00229-JDL, 2017 WL 3573813, at *10 (D. Me. Aug. 17, 2017) (holding that an allegation that a company was a debt collector under federal and Maine law is a legal conclusion).  In response, Ross relies on his allegations concerning NewRez's letter to argue that NRM was a mortgage servicer, but this letter contradicts Ross's theory.  The letter explained that PHH performed all servicing activities on his loan, thereby undermining Ross's argument that NRM was his mortgage servicer.  *See* 14 M.R.S. § 6113(1)(B-1) ("'[M]ortgage servicer' means a person responsible for servicing an obligation, including a person that holds or owns an obligation or originates a mortgage loan if the person also services the obligation.");  *see also* Compl. Ex. 5 (the letter);  *Cheng v. Neumann*, 51 F.4th 438, 445 (1st Cir. 2022) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000))).

caused him to be unable to obtain a loan modification that would have lowered his interest rate and mortgage payments. *See* Compl. ¶ 41. Furthermore, Ross has implicitly requested actual damages. In his Complaint, Ross requests that the Court "[i]mpose whatever other sanctions or remedies the Court finds just and equitable" concerning Count I. *Id.* ¶ 71(c). While Ross, apparently by mistake, did not explicitly request actual damages, this requested relief is broad enough to encompass a request for actual damages.

I therefore conclude that Ross has plausibly alleged and requested actual damages, and I now consider PHH's two remaining arguments.

### 3. Preclusion

PHH maintains that Ross is precluded from asserting a claim under § 6113 because a mediator previously determined that the parties acted in good faith during court-supervised mediation. PHH's Mot. to Dismiss at 9–10. In his report, the mediator wrote that he "fel[t] that both parties have acted in good faith (within the normal practices of the [Foreclosure Diversion Program])." PHH's Mot. to Dismiss Ex. 7 at 4. Maine law requires parties to "make a good faith effort to mediate all issues." 14 M.R.S. § 6321-A(12); *see also id.* § 6321-A(13) ("As part of the report, the mediator may notify the court if, in the mediator's opinion, either party failed to negotiate in good faith.").

PHH argues that state courts have "a full panoply of remedies for the protection of all parties should bad faith conduct occur" and that a "separate cause of action to enforce the duty of good faith in the course of the court-supervised mediation is therefore inconsistent with these statutory requirements." PHH's Mot. to Dismiss at 10. In its view, "there cannot be a finding of good faith conduct, and then a separate action based [on]

something that is opposite to that finding" especially when Ross "did not challenge that determination by making an application to the Court." *Id.*

PHH has not identified any legal authority to argue that Ross is somehow precluded from bringing this action based on the mediator "fe[eling] that both parties have acted in good faith" during mediation. PHH's Mot. to Dismiss Ex. 7 at 4. The mediator's feelings have nothing to do with the general requirements of claim and issue preclusion. At most, the mediator's feelings concern the weight to be given to Ross's argument that PHH acted in bad faith. Furthermore, Ross's theory concerning Count I has nothing to do with the mediation whatsoever. Count I concerns the terms of the initial loan modification offer, the subsequent refusal to extend Ross a similar offer after he discharged his second mortgage, and the alleged false statements within the letter denying Ross a loan modification. *See* Compl. ¶¶ 62–64.

### 4. Retroactivity

Lastly, PHH argues that Count I must be dismissed because Ross's allegations, in its view, concern conduct before September 19, 2019, when § 6113 was enacted. PHH's Mot. to Dismiss at 10–11.

The Law Court "appl[ies] 'the common law presumption that, absent language to the contrary, legislation affecting'" "substantive rights should be applied prospectively," and not retroactively, "unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used." *In re Guardianship of Jeremiah T.*, 976 A.2d 955, 960 (Me. 2009) (quoting *Greenvall v. Me. Mut. Fire Ins. Co.*, 788 A.2d 165, 166–67

(Me. 2001)); *see also Reading Law: The Interpretation of Legal Texts*, Antonin Scalia & Bryan A. Garner 261 (2012) ("A statute presumptively has no retroactive application.").

PHH characterizes Ross as exclusively relying on conduct before § 6113's enactment in arguing that dismissal of Count I is appropriate. Though Ross makes allegations concerning events that occurred before September 2019 to provide context, PHH's characterization of Count I is inaccurate. Ross's theory against PHH concerns the PHH Mortgage Services Modification Plan contained within the MAO in a letter that appeared to be from NewRez in December 2019, the company's refusal to extend a similar offer after Ross discharged his second mortgage, and the company's alleged statements that were false and violated federal law and regulations. *See* Compl. ¶¶ 25–29, 62, 64. Thus, I understand Ross's theory of Count I to only concern conduct after § 6113's enactment, and there is no issue concerning retroactive liability.

In sum, Count I is dismissed as to only NRM.[3]

## B.    **Count II**

In Count II, Ross alleges that PHH violated § 2605(k) of the Real Estate Settlement Procedures Act ("RESPA") and the Consumer Financial Protection Bureau's ("CFPB") accompanying regulations by failing to properly respond to his July 2022 letter requesting

---

[3] PHH, for the first time in its reply brief, argues that "there is no liability for failing to approve an application for a loan modification" under 14 M.R.S. § 6113(F)(4). PHH's Reply (ECF No. 44) at 1. Section 6113(F)(4) defines servicing as "[e]valuating the obligor for loss mitigation or communicating with the obligor with respect to loss mitigation." Section 6113(F)(6), however, defines servicing as "[t]aking any other action with respect to an obligation that affects the obligor's payment or performance of the obligation or that relates to the enforcement of the rights of the loan owner arising under the obligation." This broad definition includes a servicer's decision regarding an obligor's requested loan modification, so I reject PHH's argument.

information concerning the denial of his requested loan modification. *See* 12 U.S.C. § 2605(k); 12 C.F.R. § 1024.36(d). PHH moves to dismiss Count II, arguing that Ross has failed to state a claim because his letter was not a qualified written request ("QWR") within the meaning of RESPA. PHH's Mot. to Dismiss at 11–13. Alternatively, PHH argues that Ross has not alleged actual damages.

### 1. Qualified Written Request

Section 2605(k) of RESPA lists five activities that "servicer[s] of" "federally related mortgage[s]" are prohibited from engaging in. 12 U.S.C. § 2605(k). The fifth prohibition, found in § 2605(k)(1)(E), states that a "servicer of a federally related mortgage shall not" "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." *Id.* § 2605(k)(1)(E). Section 2605(f) confers a private right of action against servicers who fail to comply with § 2605. *See id.* § 2605(f).

Servicers must "comply with the requirements of" 12 C.F.R. § 1024.36 "for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a). Thus, within five business days "of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request." *Id.* § 1024.36(c). Servicers must then either "[p]rovid[e] the borrower with the requested information and contact information, including a telephone number, for further assistance in writing," or

15

"[c]onduc[t] a reasonable search for the requested information" and "provid[e] the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer" with "the basis for the servicer's determination" and contact information. *Id.* § 1024.36(d); *see also* § 1024.36(d)(2) (discussing the time limits). These requirements apply unless the servicer reasonably determines that at least one of nine exceptions apply. *Id.* § 1024.36(f) (the exceptions).

PHH argues that Ross's July 2022 letter was not a QWR for information relating to the servicing of a loan within the meaning of § 2605(e)(1)(A) of RESPA, so Count II must be dismissed. *See* PHH's Mot. to Dismiss at 11–13.

Section 2605(e) of RESPA requires "servicer[s]" of "federally related mortgage loan[s]" to "provide a written response acknowledging receipt" of "qualified written request[s] from" a "borrower" or a borrower's "agent" "for information relating to the servicing of such loan[s]" within five business days. 12 U.S.C. § 2605(e)(1)(A). Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts" and "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." *Id.* § 2605(i)(3).

PHH references various opinions from Circuit Courts of Appeals to argue that a "loan modification is a contractual issue, not a servicing matter," so Count II should be dismissed. PHH's Mot. to Dismiss at 12 (quoting *Morgan v. Caliber Home Loans*, *Inc.*, 26 F.4th 643, 651 (4th Cir. 2022)).

Though PHH musters an impressive amount of persuasive authority concerning the meaning of § 2605(e), Ross, it appears, does not bring Count II under § 2605(e).  *See* Compl. ¶¶ 72–87 (Count II).  Instead, Ross's Complaint cites to § 2605(k), which contains the five servicer prohibitions.  Though Ross does not cite which specific prohibition his claim rests upon, and he does not elaborate on his theory in his response, it appears that he is relying on § 2605(k)(1)(E), which functions as a catchall by prohibiting servicers from "fail[ing] to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."  12 U.S.C. § 2605(k)(1)(E).  Ross, in turn, alleges a violation of 12 C.F.R. § 1024.36(d), which regulates how servicers must respond to information requests.  Unlike § 2605(e) of RESPA, 12 C.F.R. § 1024.36 does not require that the information request relate to the servicing of the loan.  *See* 12 C.F.R. § 1024.36(a).  Thus, PHH's argument concerning 12 U.S.C. § 2605(e) is off the mark because 12 C.F.R. § 1024.36(a) sweeps more broadly, governing "any written request for information" that "states the information the borrower is requesting with respect to the borrower's mortgage loan."  12 C.F.R. § 1024.36(a).

In response, PHH argues that "Regulation X did not expand the scope of RESPA to require a loan servicer to respond to a request seeking information 'with respect to' a loan."  PHH's Reply (ECF No. 44) at 3 (quoting *Suarez v. Nationstar Mortg. LLC*, No. 23-CV-20114, 2023 WL 7505266, at *9 (S.D. Fla. May 19, 2023)).  PHH characterizes Ross as attempting to use a regulation to, in the colorful words of Justice Scalia, "conjure up a private cause of action that has not been authorized by Congress."  *Id.* at 4 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)).  I discern no such witchcraft here.

RESPA explicitly prohibits servicers from failing to comply with "any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). Because 12 C.F.R. § 1024.36(a) governs "any written request for information" that "states the information the borrower is requesting with respect to the borrower's mortgage loan," I conclude that Ross has plausibly pleaded that this regulation governed his July 5, 2022, combined request for information and appeal of the loan modification denial and that PHH's alleged failure to properly respond in accordance with 12 C.F.R. § 1024.36(d) states a plausible claim concerning 12 U.S.C. § 2605(k)(1)(E) and 12 C.F.R. § 1024.36(d).

I observe that insofar as Ross purports to bring Count II under 12 C.F.R. § 1024.36 (as opposed to under RESPA), courts have reached differing conclusions as to whether that regulation establishes a private right of action. *See Fox v. Statebridge Co.*, *LLC*, 629 F. Supp. 3d 300, 308 n.1 (D. Md. 2022) (citing cases); *Lucas v. New Penn Fin.*, LLC, No. 17-CV-11472-ADB, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019) (concluding that 12 U.S.C. § 2605(f) provides a private right of action for a violation of 12 C.F.R. § 1024.35 because of the language within 12 U.S.C. § 2605(k)(1)(E)). PHH has not briefed whether there is a private right of action under that regulation, so I do not address that issue today.

### 2. *Actual Damages*

PHH alternatively argues that Ross has not alleged actual damages.

Based on the language within § 2605(f) concerning actual damages, "courts have held that in order to survive a motion to dismiss, a plaintiff must plead sufficient facts to show that he suffered actual, demonstrable damages and that the damages occurred as a

result of the specific violation." *Bowen v. Ditech Fin. LLC*, No. 2:16-CV-00195-JAW, 2017 WL 4158601, at *14 (D. Me. Sept. 19, 2017). Ross's Complaint implicitly alleges actual damages. Ross claims that NewRez's alleged reasons for denying his request for a loan modification were false and violated numerous federal regulations. Compl. ¶¶ 54, 64, 68, 70–71. Ross then sent a letter to PHH, asking for more information about his requested loan modification. *Id.* ¶¶ 80–81. Ross alleges that PHH's response was deficient, and the fair implication of his allegations is that if PHH had adequately responded to his questions, he might have been able to use that information to obtain a favorable loan modification and lower his mortgage payments. The potential for lower mortgage payments qualifies as a plausible allegation of actual damages at this early stage of the litigation. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 721 (6th Cir. 2013) (holding that the plaintiff "sufficiently stated that interest damages flowed from" the defendant's deficient response to her "QWR because any additional interest" paid thereafter would "flow from the deficient response").

Count II will remain against PHH.

## C.    Count III

In Count III, Ross alleges, on behalf of a putative class, that NRM conducts the business of a debt collector by servicing his and the class's mortgages without a valid license, in violation of 32 M.R.S. § 11031(1). NRM moves to dismiss Count III on the grounds that Ross lacks standing to prosecute this claim and that Ross has not plausibly alleged that NRM is a debt collector. NRM & NewRez's Mot. to Dismiss at 4–9.

NRM argues that Count III must be dismissed because Ross has not alleged a concrete injury resulting from NRM allegedly conducting business as a debt collector without a valid license. In response, Ross argues that the denial of "information to which the borrower is entitled to obtain, such as the identity of the actual servicer of [his] mortgage loan" amounts to a concrete injury. Resp. in Opp'n to NRM & NewRez's Mot. to Dismiss (ECF No. 43) at 8. Even if this is true, Ross has not alleged that NRM conducting business as a debt collector without a license has caused him to not know the identity of his mortgage servicer. Frankly, it is hard to see any possible connection between the two. Having alleged no concrete injury, Ross is merely attempting "to ensure [NRM's] compliance with regulatory law" through Count III, and this cannot give rise to Article III standing. *TransUnion*, 594 U.S. at 427 (quoting *Spokeo*, 578 U.S. at 345 (Thomas, J., concurring)); *see also Browne v. Nat'l Collegiate Student Loan Tr.*, No. 21-CV-11871-KM-JSA, 2021 WL 6062306, at *1 (D.N.J. Dec. 22, 2021) (reasoning that a plaintiff lacked standing when seeking "a declaratory judgment that defendants violated" a statute by "collecting debts in New Jersey without a license" because he did not allege any concrete harm).

Count III will be dismissed.

## D.   Count IV

In Count IV, Ross alleges, on behalf of a putative class, that Defendants have conspired to conceal the identity of consumers' actual mortgage servicers, thereby violating the mortgage servicer duty of good faith. Compl. ¶¶ 104, 107. He further claims

that Defendants violated their duty of good faith by enabling NRM to allegedly operate as a mortgage servicer and debt collector in Maine without the required licenses. *Id.* ¶ 106.

Defendants seek dismissal of Count IV, arguing that Ross lacks Article III standing and that he has not alleged actual damages. NRM separately argues that Ross has not alleged that it is a debt collector. PHH and NRM both argue that Ross has not alleged that they are mortgage servicers. NRM & NewRez's Mot. to Dismiss at 4–12. Lastly, PHH argues that the class allegations should be stricken because Ross's putative class action is not sufficiently definite, would involve individualized issues, and is an impermissible "fail-safe" class action.[4] PHH's Mot. to Dismiss at 14–22.

I begin—and end—with standing.

Insofar as Ross's claim is premised upon Defendants violating their duty of good faith by allegedly enabling NRM to operate as a mortgage servicer and debt collector in Maine without the required licenses, Ross has not alleged a resulting concrete injury for the reasons stated above concerning Count III.

To the extent that Count IV depends on Ross's allegations that Defendants have conspired to conceal the identity of consumers' actual mortgage servicers in violation of their duty of good faith, Ross has similarly failed to allege an injury in fact. In response, Ross argues that the denial of "information to which the borrower is entitled to obtain, such

---

[4] Fail-safe classes entail "a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Such classes "includ[e] only those who are entitled to relief," and they are "prohibited because [they] would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class.'" *Id.* (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).

as the identity of the actual servicer of [his] mortgage loan" is a concrete injury.  Resp. in Opp'n to NRM & NewRez's Mot. to Dismiss at 8.  In support, Ross likens the harm that a borrower experiences to two Supreme Court cases in which the Court found that the plaintiffs alleged an injury in fact when they claimed that they were wrongfully denied information subject to public-disclosure laws.  *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 13–14 (1998); *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 448–49 (1989).

Recently, in *TransUnion LLC v. Ramirez*, the Supreme Court reasoned that "*Akins* and *Public Citizen* d[id] not control" because the "plaintiffs did not allege that they failed to receive any required information" and that "those cases involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information."  594 U.S. at 441.  Ross's analogy, while creative, lacks persuasive force because, like the plaintiffs in *TransUnion*, Ross has not sued under a public-disclosure law.  *See* 14 M.R.S. § 6113.  Ross's argument is premised upon the Defendants being required by statute to notify him about his mortgage servicer, but he has not identified such an explicit statutory requirement.  Therefore, the alleged withholding of information does not amount to a concrete injury in fact by itself.

Ross has not alleged any "downstream consequences" from Defendants' alleged concealment of the identity of his mortgage servicer.  *TransUnion*, 594 U.S. at 442 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (quoting *Trichell v. Midland Credit Mgmt.*, *Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020))).  In response, Ross offers a laundry list of alleged harms, such as attorney's fees stemming from a foreclosure action and anxiety over the possibility of losing his home.  *See* Resp. in

Opp'n to PHH's Mot. to Dismiss (ECF No. 42) at 16–17.  I do not see how this list of alleged injuries stems from Defendants' alleged concealment of the identity of Ross's mortgage servicer.  Rather, it appears that these alleged injuries originate from Ross defending against foreclosure, in part, because he could not obtain a loan modification. Regardless, Ross's laundry list comes too late: Ross was required to "clearly . . . allege [in his complaint, not in his response,] facts demonstrating" that he suffered an injury in fact caused by the Defendants.  *Warth*, 422 U.S. at 518; *see also McBreairty v. Miller*, 93 F.4th 513, 518–20 (1st Cir. 2024) (closely analyzing a complaint and ultimately concluding that the plaintiff lacked standing based on the allegations therein).  Ross's Complaint is devoid of any allegations of harm caused by the Defendants' alleged conspiracy to conceal the identity of his mortgage servicer.[5]

Accordingly, Count IV will be dismissed as to each Defendant because Ross lacks Article III standing.  It is unnecessary to examine the Defendants' remaining arguments for the dismissal of Count IV.

### CONCLUSION

For the foregoing reasons, NRM & NewRez's Motion to Dismiss (ECF No. 17) and PHH's Motion to Dismiss (ECF No. 22) are **GRANTED IN PART** and **DENIED IN PART**.

---

[5] I observe that the breadth of Ross's putative class is problematic because it would seemingly include uninjured individuals.  "Every class member must have Article III standing in order to recover individual damages.  'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'"  *TransUnion*, 594 U.S. at 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)).

Count I is DISMISSED as to NRM only.  NewRez and PHH remain defendants as to Count I.

Count II remains against PHH.

Count III is DISMISSED.

Count IV is DISMISSED.

Therefore, NRM is dismissed as a defendant.

SO ORDERED.

Dated this 14th day of May, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge